NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EVELYN CIOLETTI,<br><br>                    Plaintiff,<br><br>v.<br><br>CONTINENTAL AIRLINES, INC., JOHN DOE (1-10) et al.,<br><br>                    Defendants. | Civil Action No. 2:09-cv-3014 (SDW)<br><br><br><br>OPINION<br><br><br><br>July 25, 2011 |

**WIGENTON**, District Judge.

Before the Court is Defendant's, Continental Airlines ("Continental"), Motion for Summary Judgment ("Motion") pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391(a)(1). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendant's Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 13, 2007, Plaintiff Evelyn Cioletti was a passenger on a Continental Airlines flight departing from Newark, New Jersey to Las Vegas, Nevada. (Compl. at 1, ¶ 1.) Plaintiff was seated on the aisle of row twenty-three and was traveling with two friends, one of whom was seated on the aisle of row twenty-six and the other of whom was seated on the aisle of row twenty-seven. (Dep. of Evelyn Cioletti, "E.C. Dep." at 28:20-21, 30:4-19, 30:23-31:23.)

1

Approximately 90 to 105 minutes into the flight, Plaintiff went to the lavatory in the back of the plane and—before returning to her seat—stopped at her friend's seat at row twenty-seven for a brief conversation. (*Id.* at 28:4-7, 32:23-33:25.) While Plaintiff was speaking with her friend, she noticed a male flight attendant approximately fourteen rows ahead pulling a beverage cart from the front of the plane to the back. (*Id.* at 47:25-49:3, 52:5-10.) When Plaintiff returned to her row and tried to sit in her seat, the flight attendant was approximately four rows ahead of her. (*Id.* at 58:20-59:1.) At this point, Plaintiff had both of her legs in her row—not the aisle—and was facing her seat. (*Id.* at 39:8-15.) A Continental "Station Report of Customer Incident" indicates that Plaintiff stated that she was afraid that the flight attendant would run into her and therefore she tried to get into her seat quickly. (Pl. Ex. D.) Then, as she attempted to sit in her seat, the "motion of turning" towards the front of the plane caused her right knee to twist and she fell onto a tote bag belonging to the passenger in the next seat. (*Id.* at 39:16-41:9.) At no point did Plaintiff come into contact with the flight attendant. (*Id.* at 60:14-17.) Plaintiff did not trip on the tote bag nor did any other object cause her to trip. (*Id.* at 40:18-41:17.)

John Vieyra confirmed that he was the flight attendant operating the beverage cart on the flight. (Deposition of John Vieyra, "J.V. Dep." at 51:6-12.) Mr. Vieyra noted that he looked to the rear of the plane to make sure no one was in the aisle each time he moved the beverage cart. (*Id.* at 57:6-58:21, 65:6-13.) At no point did Mr. Vieyra notice Plaintiff in the aisle. (*Id.* at 70:8-16.) When Mr. Vieyra reached Plaintiff's row, he noticed that Plaintiff was holding her knee and asked if she needed a bag of ice. (*Id.* at

52:17-53:12.) Mr. Vieyra gave Plaintiff a bag of ice but did not ask her why she needed it and had no idea how she became injured. (*Id.* at 55:25-56:17.)

On May 7, 2009, Plaintiff commenced the instant action by filing a complaint in the Superior Court of New Jersey, Passaic County, alleging that her injuries were caused by Continental's negligence. (Compl.) Essentially, Plaintiff argues that "Continental had no safety plan in place to instruct flight attendants how to check behind them for passengers in aisles while serving meals and beverages" and that "[t]his lack of a plan breached Continental's duty to Ms. Cioletti and, combined with Flight Attendant[] Vieyra . . . moving the cart at a fast rate of speed towards Ms. Cioletti causing her to have to quickly move into her seat and twist her knee." (Pl.'s Br. at 5-6.) Continental removed the case to this Court on June 17, 2009. Continental now brings this motion for summary judgment.

**LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may

3

not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 323.

## DISCUSSION

### Negligence

New Jersey Courts define negligence as "conduct which falls below the standard established by law for the protection of others against an unreasonable risk of harm." *Pfenninger v. Hunterdon Cent. Reg'l High Sch.*, 167 N.J. 230, 240 (2001) (quoting Restatement (Second) of Torts § 282 (1965)). The law requires that persons act as a "prudent man" and "take reasonable precautions to prevent causing harm to another." *Id.* A heightened standard is applicable to common carriers as follows:

> Carriers which accept passengers entrusted to their care must use great caution to protect them, which has been described as the 'utmost caution characteristic of very careful prudent men,' or 'the highest possible care consistent with the nature of the undertaking,' and this may include the relational duty to exercise control of the conduct of third persons.

4

> [*Kantonides v. KLM Royal Dutch Airlines*, 802 F. Supp. 1203, 1213 (D.N.J. 1992) (quoting *Ricci v. Am. Airlines*, 226 N.J. Super. 377, 381 (N.J. Super. App. Div. 1988)).]

A carrier must "avoid the dangers that are known or reasonably anticipated." *Id.*

To establish negligence, a plaintiff must demonstrate that the defendant (1) owed the plaintiff a duty; (2) breached that duty; and (3) that the breach caused a "foreseeable resulting injury." *Anderson v. Sammy Redd and Assocs.*, 278 N.J. Super. 50, 56 (N.J. Super. App. Div. 1994). The court may determine the existence and scope of a duty as it is a question of law. *Id.*; *Pfenninger v. Hunterdon Cent. Reg'l High Sch.*, 167 N.J. at 240. Further, "whether a duty exists is ultimately a question of fairness." *Pfenninger v. Hunterdon Cent. Reg'l High Sch.*, 167 N.J. at 240-24. This analysis requires that the court weigh "the relationship of the parties, the nature of the risk and the public interest in the proposed solution." *Kantonides v. KLM Royal Dutch Airlines*, 802 F. Supp. at 1213 (quoting *Wang v. Allstate Ins. Co.*, 125 N.J. 2, 15 (1991)). New Jersey courts explain that the existence of a duty of care depends on whether:

> . . . the offending conduct foreseeably involved unreasonably great risk of harm to the interests of someone other than the actor. [T]he obligation to refrain from that particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous. Duty, in other words, is measured by the scope of the risk which negligent conduct foreseeably entails.
>
> [*People Express Airlines, Inc. v. Consol. Rail Corp.*, 194 N.J. Super. 349, 357-358 (N.J. Super. App. Div. 1984) (quoting 2 Harper & James, The Law of Torts § 18.2, at p. 1018 (1956), cited in *Union Oil Co. v. Oppen*, 501 F.2d 558, 568 (9th Cir. 1974)) ].

As stated above, the relationship between these parties, that of passenger and carrier, requires that Defendant be held to a heightened duty of care. However, that heightened standard does not mean that Defendant is responsible for any and all injuries

that are sustained by passengers. Nothing in the record indicates that the sequence of events leading to Plaintiff's injury were known or reasonably anticipated. The actions of the flight attendant were in no way unreasonably dangerous. The record contains no evidence to support Plaintiff's fear that she would be hit by the beverage cart. Vieyra had no obligation to refrain from this particular conduct as Plaintiff was not foreseeably endangered. All of Plaintiff's claims relating to negligence are therefore dismissed.

**Nuisance**

Under New Jersey law "private nuisance involves an 'invasion of another's interest in the private use and enjoyment of land.'" *In re Lead Paint Litigation*, 191 N.J. 405, 426 (2007) (quoting Restatement (Second) of Torts §§ 821D, 821E, 822 (1979)). This claim has two elements: "1) unreasonable use by the defendant and 2) significant harm to the plaintiff." *Rowe v. E.I. Dupont De Nemours and Co.*, 262 F.R.D. 451, 459 (D.N.J. 2009). A harm is significant if "normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable . . . ." *Id.* (quoting Restatement (Second) of Torts § 821F, cmt. d).

A public nuisance, on the other hand, "is an unreasonable interference with a right common to the general public." *Rowe v. E.I. Dupont De Nemours and Co.*, 262 F.R.D. at 462 (quoting Restatement (Second) of Torts § 821B(1)). The elements for a claim of public nuisance are "1) an unreasonable interference and 2) a right common to the general public." *Id.* This type of claim requires the existence of an "interference with the interests of the community at large." *In re Lead Paint Litigation*, 191 N.J. at 422. Further, this cause of action "has historically been tied to conduct on one's own land or property as it affects the rights of the general public." *Id.* at 423-424.

This Court is unsure if Plaintiff wishes to pursue the nuisance claims in her Complaint as these were not addressed in her brief in opposition to the present motion. In any case, these claims would fail because this matter does not involve real property.

**CONCLUSION**

For the reason stated above, summary judgment is granted in Defendant's favor as to the entire complaint.

<u>s/Susan D. Wigenton, U.S.D.J.</u>

Orig:   Clerk

cc:   Madeline Cox Arleo, U.S.M.J.
      Parties